**Case No. 17-6466**

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**RODOLFO IBARRA-BANUELOS,**

**Defendant-Appellant.**

---

On appeal from the United States District Court
for the Eastern District of Tennessee

---

**BRIEF OF THE UNITED STATES**

---

J. Douglas Overbey
United States Attorney
Eastern District of Tennessee

Donald Wayne Taylor
Assistant United States Attorney
220 West Depot Street, Suite 423
Greeneville, Tennessee  37743
(423) 639-6759

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

STATEMENT OF THE ISSUE..................................................................1

STATEMENT OF THE CASE ...................................................................1

SUMMARY OF ARGUMENT ..................................................................10

STANDARD OF REVIEW .....................................................................10

ARGUMENT .......................................................................................11

   I.   Although the government must ordinarily obtain a warrant for CSLI after *Carpenter*, the CSLI in this case was obtained pursuant to a court order, consistent with this Court's then-controlling precedent. ....................................11

   II.   Because law enforcement agents obtained the CSLI in this case in objectively reasonable reliance upon binding appellate precedent, the exclusionary rule is inapplicable..................................................................12

   III.   In any event, given the totality of the evidence presented at trial, any error in the admission of the CSLI was harmless. ..............................................14

CONCLUSION....................................................................................16

CERTIFICATE OF SERVICE .................................................................16

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ............177

i

# TABLE OF AUTHORITIES

Cases

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) ........................................ passim

*Davis v. United States*, 564 U.S. 229 (2011) .................................................... 12, 13

*Henderson v. United States*, 568 U.S. 266 (2013) ..................................................11

*Herring v. United States*, 555 U.S. 135 (2009).................................................. 12, 13

*Johnson v. United States*, 138 S. Ct. 2676 (2018) ...................................................14

*Johnson v. United States*, 520 U.S. 461 (1997) .......................................................10

*Mapp v. Ohio*, 367 U.S. 643 (1961).........................................................................13

*Silverthorne Lumber Co. v. United States*, 251 U.S. 386 (1920) ...........................13

*Stone v. Powell*, 428 U.S. 465 (1976).....................................................................12

*United States v. Buford*, 632 F.3d 264 (6th Cir. 2011)...........................................13

*United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016).....................................11

*United States v. Childs*, 539 F.3d 552 (6th Cir. 2008)...........................................15

*United States v. Leon*, 468 U.S. 897 (1984) ...........................................................12

*United States v. Lopez*, 453 F. App'x 602 (6th Cir. 2011) .....................................14

*United States v. Master*, 614 F.3d 236 (6th Cir. 2010)............................................12

*United States v. Murphy*, 241 F.3d 447 (6th Cir. 2001) ...........................................16

*United States v. Olano*, 507 U.S. 725 (1993) .........................................................11

*United States v. Pembrook*, 876 F.3d 812 (6th Cir. 2017)........................................14

*United States v. Peoples*, 432 F. App'x 463 (6th Cir. 2011) ....................................14

*United States v. Stewart*, 628 F.3d 246 (6th Cir. 2010)...........................................15

*Weeks v. United States*, 232 U.S. 383 (1914) .........................................................13

Statutes

18 U.S.C. § 2 ...........................................................................................................9

18 U.S.C. § 1956(h) ................................................................................................9

18 U.S.C. § 2703(c)(1)...........................................................................................11

21 U.S.C. § 841(a)(1)..............................................................................................9

21 U.S.C. § 846.......................................................................................................9

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.  The issue in this case is fully presented in the briefs and in the record, so this Court's decisional process is unlikely to be aided by oral argument.

## STATEMENT OF THE ISSUE

Whether the district court plainly erred by admitting cell site location information obtained pursuant to a court order, consistent with then-controlling circuit precedent before *Carpenter v. United States*, 138 S. Ct. 2206 (2018).

## STATEMENT OF THE CASE

As early as December 2012, and continuing through mid-October 2015, defendant conspired with others to distribute methamphetamine and launder the drug proceeds.[1]  (*See* R. 40, Superseding Indictment at PageID# 76-78.)

In January 2013, law enforcement officers searched the residence defendant shared with his son and his son's girlfriend in Winchester, Virginia.[2]  (R. 527, 6/05/17 Trial Tr. at PageID# 4877-78, 4880, 4912-13.)  In defendant's bedroom, they found $5,600 cash, used drug packaging consistent with a quantity of at least

---

[1] Because defendant does not dispute the sufficiency of the evidence for his convictions, the United States summarizes the evidence from trial only briefly.

[2] Earlier that day, as part of a buy/bust operation, defendant's son and another man had been arrested with 27.4 grams of methamphetamine.  (R. 527, 6/05/17 Trial Tr. at PageID# 4905-07.)

one ounce, and mail bearing defendant's name.  (R. 527, 6/05/17 Trial Tr. at PageID# 4880-81, 4886-88.)  Elsewhere in the residence, they found 20.4 grams of methamphetamine, digital scales, additional cash, and an identification card bearing defendant's photograph.  (*Id*. at PageID# 4878, 4880-85, 4905.)  Subsequent laboratory testing revealed that the drugs included 19.9 grams of pure methamphetamine.  (*Id*. at PageID# 4909-10.)

Over time, investigators began to suspect that defendant was obtaining large quantities of methamphetamine from a Mexican drug cartel and then distributing those quantities to other individuals for resale.  (*See*, *e.g.*, R. 529, 6/07/17 Trial Tr. at PageID# 5290-91.)  Co-defendant Kathy Fawbush testified at trial that she met defendant through Juan Solis, who sold her ounce quantities of methamphetamine, which she then resold to others in smaller quantities.  (R. 528, 6/06/07 Trial Tr. at PageID# 5085-88.)  Over time, Fawbush learned that defendant was Solis's supplier and could obtain kilogram quantities of methamphetamine, after which defendant began selling methamphetamine to Fawbush in half-kilograms and also introduced her to other methamphetamine distributors, including Rick Munsey.[3]

---

[3] Munsey, too, testified at trial, saying that defendant supplied him with up to one pound of methamphetamine at a time, sometimes "fronting" the drugs to him by providing them on credit.  (R. 529, 6/07/17 Trial Tr. at PageID# 5288-97, 5301-02 (also testifying that, on one occasion in 2015 when Munsey sought to get more methamphetamine from defendant, he noticed several Hispanic individuals "taking the floorboard out" of a car to retrieve methamphetamine concealed in it).)  Phone records confirmed that, between March and June 2015, there were 13 text

(*Id*. at PageID# 5089-99.)  Fawbush testified that defendant supplied her with a total of approximately two kilograms of methamphetamine between June 19, 2015, and August 27, 2015, when they were both apprehended.  (*Id*. at PageID# 5100; *see also* R. 527, 6/05/17 Trial Tr. at PageID# 5024 (noting that Fawbush readily admitted having obtained multiple kilograms of methamphetamine from defendant).)  Fawbush resold the methamphetamine to others from her residence, then returned most of the money to defendant.  (R. 528, 6/06/17 Trial Tr. at PageID# 5104-05.)

On July 15, 2015, law enforcement agents sent two confidential informants —including one Fawbush knew only as "Ron" but who was identified during trial as Martin Bustos Garcia—to buy approximately two ounces of methamphetamine from Fawbush at her residence in a recorded transaction.  (*Id*. at PageID# 4944-49 (also noting that the informants only had $2,000, but Fawbush expected $2,400 for that drug quantity; Fawbush agreed to give the informants the drugs and allow them to pay the remaining $400 later); R. 528, 6/06/17 Trial Tr. at PageID# 5168-71.)  During the transaction, the informants suggested a future purchase of one pound of methamphetamine and tried to negotiate a better price, until Fawbush indicated she would have to ask her supplier, later identified as defendant.  (R. 527,

---

messages or phone calls between Munsey's phone and one of defendant's phones. (*Id*. at PageID# 5321.)

3

6/05/17 Trial Tr. at PageID# 4946-47; R. 528, 6/06/17 Trial Tr. at PageID# 5112-13.)  Later that month, Garcia paid Fawbush the outstanding $400 balance and continued negotiating for a future purchase.  (R. 527, 6/05/17 Trial Tr. at PageID# 4950-52; R. 528, 6/06/17 Trial Tr. at PageID# 5173-74.)

On August 27, 2015, Garcia and an informant known as "Paco" went to Fawbush's residence and eventually bought 14.5 grams of pure methamphetamine from her, in the presence of defendant and co-defendant Misty Munsey-Killian. (R. 527, 6/05/17 Trial Tr. at PageID# 4955-60; R. 528, 6/06/17 Trial Tr. at PageID# 5176-86, 5203; *see also id*. at PageID# 5074, 5077 (drug-quantity stipulations based on laboratory testing).)  Fawbush was "very" displeased by Paco's presence, because she did not know him and feared he was a police officer or otherwise working with law enforcement, so Paco was instructed to "drop his pants [and] pull his shirt up" so they could "see if he was wired."  (R. 528, 6/06/17 Trial Tr. at PageID# 5119-21, 5179-84, 5203-04.)  Garcia offered to strip naked, too, if it was necessary, and Fawbush looked to defendant, who stated that Garcia was "okay."  (*Id*. at PageID# 5185, 5204-05.)

After learning that defendant was at Fawbush's residence, law enforcement agents sent the same informants back a second time that day to buy approximately four more ounces of methamphetamine; this time, they obtained 92.8 grams of pure methamphetamine from Munsey-Killian in Fawbush's presence.  (R. 527,

4

6/05/17 Trial Tr. at PageID# 4962-64; R. 528, 6/06/17 Trial Tr. at PageID# 5212-13; *see also id*. at PageID# 5074-75, 5077 (drug-quantity stipulations based on laboratory testing).)

Meanwhile, Fawbush paid defendant $10,000 cash for methamphetamine she had already sold for him. (R. 528, 6/06/17 Trial Tr. at PageID# 5117-18, 5141-44.) Munsey-Killian then drove defendant to two separate banks, at his direction, and made two separate $5,000 bank deposits on his behalf in exchange for $100. *Id*. at PageID# 5122-23, 5205-12; *see also id*. at PageID# 5128-29 (testimony that, on other occasions, defendant offered $100 to another woman to deposit cash drug proceeds on his behalf).)

Shortly after the second controlled transaction on August 27, 2015, agents executed a search warrant at Fawbush's residence and found another 91.5 grams of pure methamphetamine, cash, and drug paraphernalia in a home office. (*Id*. at PageID# 4961-62; R. 528, 6/06/17 Trial Tr. at PageID# 5044, 5066-71, 5075, 5077.) Defendant was inside the residence at the time of the search, along with Fawbush and Summer Jones, and a vehicle registered to defendant was parked outside; Munsey-Killian returned while the search was in progress. (R. 527, 6/05/17 Trial Tr. at PageID# 4967-69, 4971.) Fawbush told the agents that defendant was her methamphetamine supplier. (R. 528, 6/06/17 Trial Tr. at PageID# 5126.)

5

Agents recovered two cellular telephones from defendant—a Samsung phone and a ZTE phone—then obtained a warrant to search the contents of those phones. (R. 527, 6/05/17 Trial Tr. at PageID# 4969-70, 4979-80; R. 528, 6/06/17 Trial Tr. at PageID# 5048-50.) On the Samsung phone, they found three "selfie" photographs of defendant, dated in March and April 2015; a call log revealing numerous phone conversations between defendant and Fawbush; and 107 text messages between July 14, 2015, and August 27, 2015, to or from a single phone number agents knew belonged to Fawbush. (R. 527, 6/05/17 Trial Tr. at PageID# 4983, 4985-86; *see also* R. 529, 6/07/17 Trial Tr. at PageID# 5321-23 (phone records established 233 separate communications between defendant's phones and three phone numbers used by Fawbush).) In one text message, Fawbush told defendant that two individuals were not paying as much as they used to. (R. 527, 6/05/17 Trial Tr. at PageID# 5031-32 (also noting that Fawbush confirmed the text "had to do with drug trafficking"); *accord* R. 528, 6/06/17 Trial Tr. at PageID# 5138-39.) In another message on August 27, 2015, Fawbush asked the defendant if "Ron" was okay, referring to whether it was safe to sell him methamphetamine. (R. 527, 6/05/17 Trial Tr. at PageID# 5115.) In multiple other messages, Fawbush alerted defendant when she had "10,000" for him, referring to $10,000 in proceeds from selling methamphetamine. (*E.g.*, R. 528, 6/06/17 Trial Tr. at PageID# 5128-34.)

Both of the cell phones recovered from defendant had been used for calls and texts to and from a specific phone number in Mexico attributed to Julio Franco

6

Perez.[4]  (R. 527, 6/05/17 Trial Tr. at PageID# 4995, 5006-09.)  For example, the call log on the Samsung phone showed eleven phone calls between defendant and Perez's Mexican number between June 5, 2015, and August 10, 2015, with the majority of those calls as outgoing calls.  (*Id*. at PageID# 4995-96.)  Text messages consistent with drug trafficking had been sent from the ZTE phone to the same Mexican number, for a total of 56 communications between defendant and Perez between June 5, 2015, and August 27, 2015.  *Id*.; R. 529, 6/07/17 Trial Tr. at PageID# 5323-24.)  For example, twice in August 2015, the name "Jose Santana" and a bank routing number had been sent via text message from the Mexican number to defendant's ZTE phone.  (R. 527, 6/05/17 Trial Tr. at PageID# 5004.)  Also on August 27, 2015, defendant received a text with the name "Sigifredo Salce Garcia," who was associated with Perez, and another bank routing number.  *Id*. at PageID# 5005, 5258-59).

---

[4] Trial testimony established that Perez was a major supplier in the Gulf Cartel, which smuggled methamphetamine from Mexico into the United States and then transported it, using couriers or "mules," to regional hubs, including Winchester, Virginia.  (R. 528, 6/06/17 Trial Tr. at PageID# 5247-54.)  Each regional hub had a single distributor responsible for selling the methamphetamine and returning proceeds to the cartel in Mexico.  *Id*. at PageID# 5254-58.)  Jose Santana testified at trial that, acting on behalf of the cartel, he sent three to five kilograms to Winchester once or twice each week for several years.  *Id*. at PageID# 5261-62.)  Defendant's repeated communications with Perez, combined with defendant's bank deposits into Santana's account (*see id*. at PageID# 5261-64), indicated that defendant was the cartel's regional distributor in Winchester, Virginia.

When apprehended on August 27, 2015, during the search of Fawbush's residence, defendant possessed deposit slips for both of those bank accounts, showing that $5,000 cash had been deposited into each account that afternoon; he also had other scraps of paper listing names (one being Jose Santana), account numbers, addresses, and specific monetary amounts consistent with drug trafficking.  (R. 527, 6/05/17 Trial Tr. at PageID# 5009-10; R. 528, 6/06/17 Trial Tr. at PageID# 5051-61, 5326-28,; *see id*. at PageID# 5231-32, 5247 (testimony that the address associated with Garcia's bank account was in Mexico and that Santana's address was in Mission, Texas, "close to the border").)  After waiving his *Miranda* rights, defendant admitted that his hands might "test positive for methamphetamine."  (R. 527, 6/05/17 Trial Tr. at PageID# 4971-76.)

During defendant's trial in June 2017, the United States presented testimony from several law enforcement agents, co-defendants Fawbush and Munsey-Killian, co-conspirators Jose Santana and Ricky Munsey, informant Martin Bustos Garcia, and two bank employees.  (*See generally* R. 439, Exhibit/Witness List, PageID# 3253-55.)  The United States also introduced audio recordings of controlled drug transactions, the methamphetamine recovered from such transactions and pursuant to search warrants, photographs of other items seized, defendant's cell phones, and numerous documentary exhibits.  *Id*.)  An FBI Special Agent testified that, as part of the investigation, he obtained historical cell site location information ("CSLI"),

pursuant to a court order, regarding one of defendant's phones between June 1, 2015, and July 16, 2015. (R. 529, 6/07/17 Trial Tr. at PageID# 5334, 5336; *accord* R. 527, 6/05/17 Trial Tr. at PageID# 4936, 4938-39.) The data indicated that the phone had traveled from Winchester, Virginia, to the vicinity of Fawbush's Tennessee residence on June 11, 2015; remained in that area from June 11 until June 20, 2015; accessed a cell tower near Winchester on June 21, 2015; and made additional trips to and from the vicinity of Fawbush's residence in Tennessee between June 23 and 25, 2015, between June 29 and July 4, 2015, and between July 7 and 8, 2015. (R. 529, 6/07/17 Trial Tr. at PageID# 5339-47.) In short, the CSLI permitted an inference that defendant made four trips to Fawbush's residence in Tennessee during the six-week period for which CSLI was obtained.

At the close of trial, the jury convicted defendant of conspiring to distribute and possess with intent to distribute at least 50 grams of actual methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A); conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h); and three substantive counts of aiding and abetting drug-trafficking offenses, each in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (R. 440, Jury Verdict, PageID# 3256-59.) The district court thereafter sentenced defendant to an aggregate term of 360 months' imprisonment. (R. 513, Judgment, PageID# 4650-57.) This appeal

followed.  (R. 518, Notice of Appeal, PageID# 4675; *see also* R. 531, Order,

PageID# 5355-56 (granting extension for appeal).)

## SUMMARY OF ARGUMENT

After defendant's trial, during which cell site location information ("CSLI")

was admitted into evidence without objection, the Supreme Court held that the

Fourth Amendment ordinarily requires a warrant for such evidence.  *Carpenter*,

138 S. Ct. at 2221.  In defendant's view, the CSLI introduced during his trial was

thus inadmissible, and he is entitled to a new trial without it.

To the contrary, the exclusionary rule is inapplicable where the government

acts in good faith, and the record establishes that the evidence at issue here was

obtained consistent with controlling circuit precedent, such that excluding the

evidence would serve no meaningful deterrent effect.  The CSLI would thus have

been properly admissible even after *Carpenter*.  In any event, given the totality of

the evidence presented at trial, any error in the admission of CSLI was harmless.

Defendant was fairly tried and his convictions should be affirmed.

## STANDARD OF REVIEW

Because defendant did not contemporaneously object to the evidence about

which he now complains, this Court reviews its admission for plain error.  *Johnson

v. United States*, 520 U.S. 461, 466-67 (1997).  Under that standard, a defendant

cannot obtain relief unless he identifies (1) an error (2) that is obvious or clear,

10

(3) that affects his substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 731-37 (1993). The "plainness" of an error is assessed by the law at the time of appellate review, not the time of trial. *Henderson v. United States*, 568 U.S. 266, 269 (2013).

## ARGUMENT

**I.  Although the government must ordinarily obtain a warrant for CSLI after *Carpenter*, the CSLI in this case was obtained pursuant to a court order, consistent with this Court's then-controlling precedent.**

The Supreme Court recently held that "the Government will generally need a warrant to access CSLI." *Carpenter*, 138 S. Ct. at 2222. Before that decision, however, this Court had held that the "collection of business records containing cell-site data was not a search under the Fourth Amendment," such that a warrant supported by probable cause was unnecessary. *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016), *rev'd*, 138 S. Ct. 2206 (2018). Pursuant to the Stored Communications Act, the government could obtain CSLI pursuant to a court order upon less than probable cause. 18 U.S.C. § 2703(c)(1), (d). This Court's opinion in *Carpenter* was binding circuit precedent at least until the Supreme Court granted certiorari on June 5, 2017, *i.e.*, after the government had obtained disclosure orders for the CSLI records at issue and after defendant's trial had already commenced.

11

Defendant thus acknowledges, as he must, that the law enforcement agents in this case acted consistently with then-controlling circuit precedent.  (Def. Brief at 38.)

## II. Because law enforcement agents obtained the CSLI in this case in objectively reasonable reliance upon binding appellate precedent, the exclusionary rule is inapplicable.

"[T]he decision to exclude evidence is divorced from whether a Fourth Amendment violation occurred."  *United States v. Master*, 614 F.3d 236, 242 (6th Cir. 2010); *accord United States v. Leon*, 468 U.S. 897, 906 (1984); *see also Herring v. United States*, 555 U.S. 135, 136 (2009) ("suppression is not an automatic consequence of a Fourth Amendment violation"); *Stone v. Powell*, 428 U.S. 465, 486 (1976) (explaining that the exclusionary rule is "not a personal constitutional right").  And where agents act with an "objectively reasonable good-faith belief that their conduct is lawful," suppression of the evidence is unwarranted.  *Davis v. United States*, 564 U.S. 229, 238 (2011).

"To trigger the exclusionary rule," the Supreme Court has explained, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."[5]  *Herring*, 555 U.S. at 144 (concluding that a wrongful arrest based on

---

[5] Under *Herring*, a district court must first objectively assess whether the police conduct was so "deliberate, reckless, or grossly negligent" that exclusion would meaningfully deter such conduct in the future.  555 U.S. at 144.  Second, the court must weigh that conduct against the exclusionary rule's "costly toll upon

an inaccurate law enforcement database amounted to "isolated negligence").

Suppression is inappropriate in the "absence of police culpability." *Davis*, 564

U.S. at 240.

It is undisputed that agents in this case "conduct[ed] a search in compliance

with binding precedent that [was] later overruled," when they obtained CSLI via a

§ 2703 order rather than a warrant. *Davis*, 564 U.S. at 232. Because they acted

in compliance with controlling circuit precedent, there is no legitimate basis to

exclude the CSLI in this case or deem it inadmissible, as requested by defendant.

(Def. Brief at 40-41.) *See*, *e.g.*, *United States v. Buford*, 632 F.3d 264, 267 (6th

Cir. 2011) ("the good-faith exception precludes application of the exclusionary

rule when police act in objectively reasonable reliance upon clear and settled Sixth

Circuit precedent that is later overruled by the United States Supreme Court");

---

truth-seeking and law enforcement objectives," including its "principal cost of . . .
letting guilty and possibly dangerous defendants go free." *Id*. at 141.

The *Herring* Court signaled that the types of action for which suppression
is appropriate are those which originally gave rise to the exclusionary rule, *i.e.*,
"intentional misconduct that was patently unconstitutional . . . [or] a flagrant or
deliberate violation of rights." *Id*. at 143. The Court cited three examples of such
misconduct: (a) breaking into a private residence and confiscating incriminating
papers without a search warrant and without any sworn and particularized
information that would have supported the issuance of a warrant, (b) entering a
place of business "without a shadow of authority" and seizing everything, and
(c) forcing open the door of a private residence, handcuffing the occupant,
brandishing a false warrant, and searching the residence. *Id*. at 143-44 (discussing
*Weeks v. United States*, 232 U.S. 383 (1914), *Silverthorne Lumber Co. v. United
States*, 251 U.S. 386 (1920), and *Mapp v. Ohio*, 367 U.S. 643 (1961), respectively).

*United States v. Peoples*, 432 F. App'x 463, 465 (6th Cir. 2011) (same); *see also*

*United States v. Pembrook*, 876 F.3d 812, 823 (6th Cir. 2017) (finding suppression

inappropriate where the "law was not established at the time the Government

sought and obtained the cell-site data at issue"), *cert. granted, judgment vacated*

*sub nom. Johnson v. United States*, 138 S. Ct. 2676 (2018).

The United States does not dispute that the method by which CSLI was

obtained in this case is no longer justifiable after *Carpenter*. "At the time it

occurred, however, it was clearly permitted . . . [and] evidence seized under these

circumstances is not subject to suppression." *United States v. Lopez*, 453 F. App'x

602, 605-06 (6th Cir. 2011). In other words, the Supreme Court's decision in

*Carpenter* does not entitle defendant to a new trial without the CSLI.

## III. In any event, given the totality of the evidence presented at trial, any error in the admission of the CSLI was harmless.

The evidence at trial amply established defendant's role in distributing

methamphetamine and laundering drug proceeds. Documentary evidence from

defendant's phones—including text messages and call logs—proved his regular

contact with co-conspirators Fawbush and Munsey as well as his supplier Perez.

And Fawbush and Munsey both testified that they obtained substantial quantities of

methamphetamine from defendant for resale, while Munsey-Killian testified about

the manner in which defendant returned drug proceeds to his supplier in Mexico.

If credited by a jury, "even the uncorroborated testimony of accomplice may

14

support a conviction." *United States v. Stewart*, 628 F.3d 246, 255 (6th Cir. 2010).

But there was more.  Law enforcement agents testified about controlled purchases

from Fawbush and the execution of search warrants in 2013 (at defendant's

residence) and in 2015 (at Fawbush's residence, when defendant was present with

the bank deposit slips in his pocket).  Indeed, evidence from the two cellular

telephones recovered from defendant on August 27, 2015, amply proved

defendant's role in the offenses of conviction.

Contrary to defendant's claim that the CSLI tended to corroborate Munsey-

Killian's testimony about making two bank deposits for defendant on August 27,

2015, and, by extension, corroborated Santana's testimony about the operation of

the conspiracy, such that the CSLI "arguably . . . influenced" the jury in crediting

the co-conspirators' testimony (Def. Brief at 40), the only CSLI presented in this

case related to the time period between June 1 and July 16, 2015, and established

that defendant's phone repeatedly traveled between Winchester, Virginia, where

defendant lived, and the vicinity of Fawbush's residence in Tennessee.  (R. 529,

6/07/17 Trial Tr. at PageID# 5336.)  Given the extremely limited effect of such

CSLI, combined with the ample other evidence of defendant's guilt, any error in

admitting the CSLI was harmless.  An erroneous evidentiary ruling "is harmless

unless it is more probable than not that the error materially affected the verdict,"

*United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008), and the Court considers

15

"what the error meant to the jury, not singled out and standing alone, but in relation to all else that happened." *United States v. Murphy*, 241 F.3d 447, 453 (6th Cir. 2001). Given the totality of the evidence in this case, the CSLI introduced at trial did not materially affect the jury's guilty verdict.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

Respectfully submitted,

J. Douglas Overbey
United States Attorney

By:   *s/ Donald Wayne Taylor*
Donald Wayne Taylor
Assistant United States Attorney
220 West Depot Street, Suite 423
Greeneville, Tennessee  37743
(423) 639-6759

## CERTIFICATE OF SERVICE

I certify that, on October 12, 2018, this brief was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and those parties may access this brief through the Court's electronic filing system.

*s/ Donald Wayne Taylor*
Donald Wayne Taylor
Assistant United States Attorney

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

UNITED STATES OF AMERICA,
          Plaintiff-Appellee,
   v.

RODOLFO IBARRA-BANUELOS,
        Defendant-Appellant.

On appeal from the United
States District Court for the
Eastern District of Tennessee
   No. 2:15-cr-107

| ENTRY NO. | DESCRIPTION OF ENTRY | PAGE ID# RANGE |
|-----------|----------------------|----------------|
| 40 | Superseding Indictment | 76-78 |
| 439 | Exhibit/Witness List | 3253-3255 |
| 440 | Jury Verdict | 3256-3259 |
| 486 | (Sealed) Presentence Report | 4528-4549 |
| 513 | Judgment | 4650-4657 |
| 518 | Notice of Appeal | 4675 |
| 527 | Trial Transcript (June 5, 2017) | 4873-5037 |
| 528 | Trial Transcript (June 6, 2017) | 5038-5279 |
| 529 | Trial Transcript (June 7, 2017) | 5280-5352 |
| 531 | Order | 5355-5356 |

        *s/ Donald Wayne Taylor*
        Donald Wayne Taylor
        Assistant United States Attorney

17